IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-609-D

ARTHUR E. DAVIS, III, )
)
        Plaintiff, )
) **ORDER**
v. )
)
DEBRA K. DAVIS, et al., )
)
        Defendants. )

On May 12, 2021, the court granted defendants' motion to dismiss for failure to state a claim and for lack of jurisdiction and dismissed plaintiff Arthur E. Davis, III's claims [D.E. 37]. The same day, the clerk entered judgment [D.E. 38]. On July 22, 2021, and May 6, 2022, the court awarded defendants reasonable attorneys' fees and costs [D.E. 44, 61]. To date, plaintiff has not complied with the court's orders to pay the attorney fee awards. On May 6, 2022, the court entered an order giving plaintiff an additional opportunity to comply with the court's orders and gave plaintiff a June 7, 2022 deadline [D.E. 61]. On June 7, 2022, the court held a hearing to evaluate the status of this case and to determine whether plaintiff complied with the court's orders [D.E. 67]. Defense counsel and one of the defendants appeared by videoconference [D.E. 64, 67]. Plaintiff did not appear [D.E. 67]. After reviewing the entire record and the arguments presented at the hearing, the court makes the following findings of fact and conclusions of law.

I.

The court makes the following findings of fact by clear and convincing evidence:

1. Plaintiff is an attorney and certified public accountant ("CPA"). He is formerly a member of the Virginia State Bar and is an inactive member of the State Bar of Georgia. See [D.E. 30-4];

[D.E. 35] 5. Plaintiff's North Carolina CPA license is currently in a retired status.

2. On August 14, 2020, proceeding pro se, plaintiff filed a complaint alleging numerous state-law claims against defendants [D.E. 1].

3. On March 8, 2021, defendants filed a motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted [D.E. 30].

4. On April 8, 2021, plaintiff responded in opposition [D.E. 35].

5. Defendants did not file a reply [D.E. 36].

6. On May 12, 2021, the court granted defendants' motion to dismiss and dismissed plaintiff's claims. The court also granted defendants' motion for attorneys' fees and costs and set a June 14, 2021 deadline for defendants to file a request for attorneys' fees and costs and supporting documents [D.E. 37].

7. On May 12, 2021, the clerk entered a judgment against plaintiff [D.E. 38].

8. On June 9, 2021, plaintiff noticed an appeal of the court's May 12, 2021 order dismissing his claims [D.E. 39]. To date, plaintiff's appeal remains pending.

9. On June 14, 2021, defendants filed a motion for attorneys' fees and costs with two exhibits in support [D.E. 43].

10. Plaintiff did not respond to defendants' motion for attorneys' fees and costs.

11. On July 22, 2021, the court granted defendants' motion for attorneys' fees and costs and awarded defendants $18,309.56 in reasonable attorneys' fees and costs. The court directed plaintiff to pay the award within 30 days [D.E. 44].

12. The same day, the clerk entered a judgment confirming the award and the 30-day deadline [D.E. 45].

2

13. On August 23, 2021, plaintiff moved for an unbonded stay of execution on the judgment awarding attorneys' fees and costs pending his appeal [D.E. 46]. The motion contains no information concerning plaintiff's efforts or ability to pay the attorney fee award. In his motion, plaintiff argued that "his arguments on the legal issues presented to the Court of Appeals provide merit for this stay." Id. at 2. Plaintiff attached his opening brief to the United States Court of Appeals for the Fourth Circuit in support of his motion [D.E. 46-1]. The attorneys' fees section of the brief does not provide information concerning plaintiff's efforts or ability to pay the attorney fee award. See id. at 5.

14. On August 24, 2021, defendants responded in opposition to plaintiff's motion to stay [D.E. 47].

15. On September 16, 2021, the court denied plaintiff's motion to stay and directed plaintiff to pay the attorney fee award not later than October 15, 2021 [D.E. 49].

16. Plaintiff did not comply with the court's order.

17. On October 15, 2021, the Fourth Circuit denied plaintiff's motion to stay pending appeal [D.E. 50].

18. On November 10, 2021, plaintiff sent a letter to the court to apprise the court of supplemental material plaintiff filed with the Fourth Circuit and attached the supplemental material [D.E. 51, 51-1]. Neither the letter nor the supplemental material contains information concerning plaintiff's efforts or ability to comply with the court's September 16, 2021 order to pay the attorney fee award.

19. On January 31, 2022, defendants moved to show cause, moved for contempt, and filed a memorandum of law in support [D.E. 52, 53].

20. On February 25, 2022, plaintiff filed a motion for an extension of time to respond and

3

a partial response in opposition to defendants' motions [D.E. 54]. In that filing, plaintiff asserted he was making "ongoing efforts to make payment in full" through "a loan" that was "still in the underwriting stage." Id. ¶¶ 7–9. Plaintiff represented that he could "provide the court with more details through evidence in the form of a verified affidavit and exhibits" if the court held a hearing. Id. ¶ 11.

21. On February 25, 2022, the court granted plaintiff an extension of time to file a more complete response in opposition to defendants' motions to show cause and for contempt [D.E. 55].

22. On March 7, 2022, plaintiff responded in opposition to defendants' motions [D.E. 57]. Plaintiff again asserted he was seeking a loan to satisfy the attorney fee award and again represented he could, at a hearing, "provide the court with more details through evidence in the form of a verified affidavit with exhibits." Id. ¶¶ 7–11. Plaintiff also repeatedly stated he was making "ongoing efforts" to comply, but did not describe any efforts other than seeking a loan. Id. ¶¶ 7, 12–13. Plaintiff "forecast[ed]" that the underwriting process for his loan would finish on April 30, 2022, and asked the court to defer considering defendants' motion "until at least May 2022." Id. ¶ 17.

23. On April 5, 2022, the court granted defendants' motion to show cause and directed plaintiff to appear in person and show cause for why he should not be held in civil contempt for violating the court's September 16, 2021 order to pay the attorney fee award [D.E. 58].

24. On May 3, 2022, the court held a hearing on defendants' motion for contempt [D.E. 59].

25. At the show-cause hearing, plaintiff made the following arguments:

    A.    In 2020, plaintiff received an economic injury disaster loan ("EIDL loan"). Before and after receiving that loan, plaintiff received two Paycheck Protection Program loans. Plaintiff applied for these loans because his income decreased by 30% during the COVID-19

4

pandemic.

B. Plaintiff applied for an additional EIDL loan of at least $19,200 and asserted he could use those funds to satisfy the attorney fee award. Plaintiff stated he qualified for this second EIDL loan but the Small Business Administration ("SBA") had not yet approved the loan.[1]

C. Plaintiff stated that if the SBA approved a second EIDL loan, the money would be wired to plaintiff's bank account at Truist.

D. Plaintiff represented that without receiving a loan, he lacked the assets or income to make a lump sum payment to satisfy the attorney fee award.

E. Plaintiff stated that as of the date of the hearing, he had $100 that he could pay toward satisfying the attorney fee award.

F. Plaintiff represented he has unsecured debt and no secured debt.

G. Plaintiff asked the court to defer holding him in contempt of court until he knew whether he would receive the second EIDL loan.

26. At the show-cause hearing, plaintiff presented no evidence to support his arguments. For example, the court asked plaintiff where the documents were showing he applied for the EIDL loan. Plaintiff stated they were online, and he did not have copies. Plaintiff also did not produce any bank statements, credit card statements, or other similar documents presenting a snapshot of plaintiff's financial position or ability to pay the attorney fee award.

27. At the show-cause hearing, plaintiff did not cite or present evidence showing any efforts

---

[1] As the court stated at least twice at the May 3, 2022 hearing, the court takes no position on the legality of using EIDL funds to satisfy an outstanding judgment.

5

besides applying for an EIDL loan to demonstrate he was attempting to comply with the court's September 16, 2021 order to pay the attorney fee award.

28. Plaintiff raised his inability-to-comply defense for the first time at the contempt hearing and had never raised such a defense at the enforcement stage of the case.

29. At the show-cause hearing, defendants filed an affidavit of attorneys' fees and exhibits in support. The court reviewed the affidavit and exhibits, and they show defendants incurred $7,856.94 in attorneys' fees and costs to pursue their motions to show cause and for contempt. [D.E. 60, 60-1, 60-2].

30. On May 6, 2022, the court entered an order making findings of fact and conclusions of law [D.E. 61]. At the end of the order, the court:

> A. Deferred making a final contempt ruling and gave plaintiff additional time to comply with the court's orders;
>
> B. Awarded defendants attorneys' fees and costs in connection with litigating their show cause and contempt motions in the amount of $7,856.94;
>
> C. Set a June 6, 2022 deadline for plaintiff to pay defendants $26,166.50, which included the $18,309.56 needed to comply with the court's September 16, 2021 order and the $7,856.94 in attorneys' fees and costs associated with the contempt proceedings; and
>
> D. Warned plaintiff that further failure to timely comply is enforceable by contempt of court, sanctions for which could include incarceration until payment is made.

31. In its May 6, 2022 order, the court scheduled a hearing for June 7, 2022 at 4:00 p.m. to

evaluate the status of the case and plaintiff's compliance with the court's orders.

32. On June 3, 2022, plaintiff mailed a letter to the court's civil case manager, which she docketed on June 7, 2022 [D.E. 66]. In the letter and attached paperwork, plaintiff argued he was providing "documentation . . . in support of the source of funding to satisfy the" attorney fee awards. Id.; see [D.E. 66-1] (documentation). Plaintiff argued this documentation was evidence he had "funds to satisfy the order." Id. Nonetheless, plaintiff stated in the letter that "[w]hat is not available is the status of the funds as of the date of [the June 7] hearing or more recently when they shut down the program," presumably referring to the EIDL loan program. Id. Although plaintiff stated his "application could still move to completion," and the resulting funds "would be sufficient to satisfy the order," plaintiff also stated "[i]t likely will require congressional action for the program to re-start." Id. Finally, plaintiff stated he offered to make an initial cash payment to defendants followed by monthly installments, and defendants declined. See id.

33. Plaintiff's June 3, 2022 letter to the court included seven pages of documents. The first page is an undated screenshot or print out apparently from the SBA website indicating plaintiff at some point received $19,200 in funding which was "disbursed to [his] account." [D.E. 66-1] 1. The image does not disclose whether this refers to plaintiff's first EIDL loan, the second loan plaintiff asserts he could use to satisfy the court's judgment, or some other loan. The second page of plaintiff's documentation is an April 6, 2021 email plaintiff sent to the SBA seeking an increase in EIDL loan funds. See id. at 2. The third page is a June 28, 2021 email from the SBA to plaintiff stating his request for an EIDL loan increase was received and that plaintiff would "be notified if further documentation is required and/or once a decision has been made." Id. at 3. The fourth and fifth pages are screenshots showing policies and terms and conditions concerning EIDL loan funds. See id. at 4–5. The sixth and seventh pages are a copy of a letter from two U.S. Senators to the SBA

7

Administrator concerning the SBA's decision to close the EIDL program "ahead of the May 6th deadline that it announced to borrowers." Id. at 6–7.

34. On June 6, 2022, plaintiff paid $125 to defendants toward satisfying the attorney fee awards. See [D.E. 62] ¶ 5.

35. On June 7, 2022, plaintiff emailed defense counsel stating he had consulted with an attorney, Morgan Davis, concerning the June 7 hearing [D.E. 62-1]. Although Davis was unavailable to attend the hearing, she referred plaintiff to a second attorney, Greg Connor. See id. As of June 7, 2022, plaintiff had "not heard back" from Connor. Id. Plaintiff stated that without legal representation, he "doubt[ed] he w[ould] appear" for the June 7 hearing. Id.

36. To date, no attorney has filed a notice of appearance in this case on plaintiff's behalf. Plaintiff continues to proceed pro se in this case.

37. In his June 7, 2022 email, plaintiff also stated he was soon traveling to a "meeting . . . to earn income and find sources to satisfy the award." Id. Plaintiff stated in the email that his ability to satisfy the awards against him is contingent on being able to work. See id.

38. In the June 7, 2022 email to defense counsel, plaintiff stated he "would voluntarily appear at the time and place designated by Judge Dever on June 20th without a hearing for civil sanction incarceration if he so orders." Id.

39. On June 7, 2022, defendants moved for attorneys fees and costs in the amount of $4,122.56 [D.E. 65]. That amount represents defendants' attorneys' fees and costs from May 4, 2022, to June 7, 2022, in connection with these contempt proceedings. See id. ¶ 6.

40. On June 7, 2022, at 4:00 p.m., the court held a hearing in this case [D.E. 67]. Defense counsel and one of the defendants appeared by videoconference. Plaintiff did not appear.

41. Because plaintiff did not appear for the hearing, plaintiff did not present any evidence or

8

argument at the hearing concerning his efforts to comply with the court's orders or his ability to pay. He also presented no argument explaining the documentation he submitted to the court with his letter of June 3, 2022.

II.

Based on these findings of fact, the court makes the following conclusions of law:

1. The purpose of civil contempt proceedings is to coerce compliance with the court's orders and to compensate the moving party for losses sustained by the alleged contemnor's noncompliance. See United States v. United Mine Workers, 330 U.S. 258, 303–04 (1947); De Simone v. VSL Pharms., Inc., No. 20-1846, 2022 WL 2036293, at *12 (4th Cir. June 7, 2022); Buffington v. Baltimore Cnty., 913 F.2d 113, 133 (4th Cir. 1990); United States v. Darwin Constr. Co., 873 F.2d 750, 753–54 (4th Cir. 1989).

2. To establish civil contempt, the moving party must establish four elements by clear and convincing evidence. See De Simone, 2022 WL 2036293, at *5; United States v. Ali, 874 F.3d 825, 831 (4th Cir. 2017); Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000). The four elements of civil contempt are: "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's 'favor'; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result." Ashcraft, 218 F.3d at 301 (cleaned up); see De Simone, 2022 WL 2036293, at *5; CFPB v. Klopp, 957 F.3d 454, 461 (4th Cir. 2020); Ali, 874 F.3d at 831.

3. Defendants, as the moving party, have met their burden and have established the following by clear and convincing evidence:

    A.    The court's orders in this case, specifically including the court's

9

September 16, 2021 and May 6, 2022 orders, are valid and in force. Plaintiff has actual knowledge of these orders.

B. The court's September 16, 2021 and May 6, 2022 orders were in defendants' favor and awarded attorneys' fees and costs to defendants.

C. Plaintiff is in knowing violation of the court's orders.

D. Defendants have suffered harm has a result of plaintiff's repeated failure to comply with the court's orders and thereby compensate defendants for their costs defending against plaintiff's lawsuit, which had "a complete absence of a justiciable issue of either law or fact," and litigating their show-cause and contempt motions. [D.E. 37] 2 (quotation omitted).

4. Once the moving party has met its burden to establish civil contempt, "the burden shifts to the [alleged contemnor] . . . to demonstrate that [he] made in good faith all reasonable efforts to comply with the [decree]." De Simone, 2022 WL 2036293, at *5 (quotation omitted; first and third alterations in original); see Klopp, 957 F.3d at 461–62; Ali, 874 F.3d at 831; Darwin Constr. Co., 873 F.2d at 754–55. The alleged contemnor bears the burden of production. See Ali, 874 F.3d at 831.

5. An alleged contemnor's "[s]ubstantial compliance" with a court's order is a defense to civil contempt. De Simone, 2022 WL 2036293, at *6; see Darwin Constr. Co., 873 F.2d at 754–55. An alleged contemnor has substantially complied with a court's order if he has taken all reasonable steps to ensure compliance. See Darwin Constr. Co., 873 F.2d at 755; De Simone, 2022 WL 2036293, at *6. In such a case, a court will excuse "inadvertent omissions." Darwin Constr. Co.,

10

873 F.2d at 755; see De Simone, 2022 WL 2036293, at *6.

6. To date, plaintiff has paid $125 of the $26,166.50 he owes defendants. The only steps plaintiff has taken to ensure compliance are applying for an EIDL loan and making some vague steps toward finding work. Thus, plaintiff has not substantially complied with the court's orders, and his minimal compliance thus far is not a defense to sanctions for contempt.

7. The inability to comply with a court's orders can be a defense in a contempt proceeding. See Turner v. Rogers, 564 U.S. 431, 442 (2011); Hicks ex rel Feiock v. Feiock, 485 U.S. 624, 638 n.9 (1988); United States v. Rylander, 460 U.S. 752, 757 (1983); Shillitani v. United States, 384 U.S. 364, 371 (1966); Maggio v. Zeitz, 333 U.S. 56, 74–77 (1948); Oriel v. Russell, 278 U.S. 358, 364–67 (1929). An alleged contemnor may not attack a court's enforcement order by raising for the first time in a contempt proceeding the party's inability to comply. See Rylander, 460 U.S. at 756–57; Ali, 874 F.3d at 828–33. However, an alleged contemnor may raise a present inability-to-comply defense by showing "an inability to comply that arises after the enforcement proceeding and exists at the time of the contempt proceeding." Ali, 874 F.3d at 829 (citing Rylander, 460 U.S. at 756–57).

8. An inability to comply means more "than merely difficult, inconvenient, or potentially impossible." South Carolina v. United States, 907 F.3d 742, 765 (4th Cir. 2018).

9. An alleged contemnor bears the burden of production to show a present inability to comply. Here, to satisfy that burden, plaintiff "ha[s] to produce evidence demonstrating his present inability to turn over the" $26,041.50[2] because he "d[oes] not presently possess the funds to comply." United States v. Butler, 211 F.3d 826, 831–32 (4th Cir. 2000); see Ali, 874 F.3d at 829.

---

[2] This figure represents the $26,166.50 plaintiff owes minus the $125 plaintiff has paid to date.

11

10. When an alleged contemnor has shown that "compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." Rylander, 460 U.S. at 757. Put differently, "[a] court may not impose punishment in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." Turner, 564 U.S. at 442 (quotation omitted); see Hicks, 485 U.S. at 638 n.9.

11. Plaintiff has not met his burden to show he presently is unable to comply with the court's orders. At the May 3, 2022 hearing, plaintiff asserted that without receiving an EIDL loan, he lacks the funds to make a lump sum payment to satisfy the court's orders. Plaintiff has presented no evidence (i.e., sworn testimony, loan documents, bank statements, credit card statements, or other financial documents) to support this assertion. See Turner, 564 U.S. at 446 (stating the question of ability to pay "is often closely related to the question of the [contemnor's] indigence"). As for the possible EIDL loan, plaintiff states it would require an act of Congress for plaintiff to receive that loan. See [D.E. 66].

As described, plaintiff submitted some documentation to the court along with his June 3, 2022 letter. Plaintiff, however failed to appear at the June 7, 2022 hearing to discuss what significance, if any, that documentation has for plaintiff's ability to pay. Moreover, plaintiff appears to have some funds, because he stated in his June 7, 2022 letter that he could make "an initial cash payment followed by a guaranteed source of funds in regular monthly pre-committed equal payments to satisfy in full the order." [D.E. 66] 1. Although defendants rejected that proposed payment plan, plaintiff has not submitted any of the details of that proposal for the court's consideration. Accordingly, it is not "clearly established that the alleged contemnor is unable to comply with" the court's orders. Turner, 564 U.S. at 442.

12. Based on the foregoing, the court finds that plaintiff is in civil contempt of court.

12

13. Moreover, the court finds that plaintiff has not met his burden of production on any defense against a finding of contempt.

14. After finding a party in civil contempt, a court may sanction that party, including by incarceration, if the sanction "is remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained." Buffington, 913 F.2d at 133; see Hicks, 485 U.S. at 631–32; Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 821–22 (4th Cir. 2004). A sentence of imprisonment is remedial "if the defendant stands committed until he performs the affirmative act required by the court's order." Hicks, 485 U.S. at 632 (quotation omitted); see Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442 (1911); Buffington, 913 F.2d at 133.

15. Fashioning "[t]he appropriate remedy for civil contempt is within the court's broad discretion." De Simone, 2022 WL 2036293, at *11 (quotation omitted); see In re Gen. Motors Corp., 61 F.3d 256, 259 (4th Cir. 1995).

III.

In sum, the court FINDS plaintiff to be in civil contempt of court. The court will hold a hearing on June 21, 2022 at 1:00 p.m. in courtroom one of the Terry Sanford Federal Building & United States Courthouse, Raleigh, North Carolina, to determine whether plaintiff has complied with the court's orders. Plaintiff SHALL appear at the hearing to tell the court whether he has complied with the court's orders or to present evidence of his inability to comply. If plaintiff has retained an attorney, the attorney SHALL file a notice of appearance and appear at the hearing. If plaintiff fails to appear at the June 21, 2022 hearing, the court will issue a bench warrant for plaintiff's arrest. If plaintiff does not comply with the court's orders and pay defendants $26,041.50 by the June 21 hearing or does not at the hearing meet his burden of production to show an adequate defense to being sanctioned for contempt, the court will sanction plaintiff by incarceration for his continued

13

contempt of court. The court DENIES WITHOUT PREJUDICE defendants' latest motion for attorneys' fees [D.E. 65].

SO ORDERED. This _10_ day of June, 2022.

                                                                 JAMES C. DEVER III
                                                                 United States District Judge